AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Middle District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. |
| Zheng Yan a/k/a "Kari" a/k/a "the Mistress"; | ) 3:19-mj- 1392-PDB |
| Yang Yang a/k/a Yang Chen a/k/a "Yuki"; | ) |
| Ge Songtao a/k/a Ge Song Tao a/k/a "Sherman"; | ) |
| Fan Yang; | ) |
| _____ | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___Sept. 2018 through Oct. 2019___ in the county of ___Duval___ in the
___Middle___ District of ___Florida___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | conspiracy to violate federal law, specifically, 13 U.S.C. § 305 (knowing submission of false and misleading export information) and 18 U.S.C. § 554 (fraudulent and knowing attempt to export and send from the United States, any merchandise, article, and object contrary to any law or regulation of the United States). |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Blake Eber, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/16/2019__

_____
*Judge's signature*

City and state:   ___Jacksonville, Florida___

Patricia D. Barksdale, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Blake Eber, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI),
United States Department of Justice, acting in my official capacity.  As such, I am an
investigative or law enforcement officer of the United States within the meaning of
Section 2510(7) of Title 18, United States Code, and am empowered by law to
conduct investigations of and to make arrest for offenses enumerated in Section 2516
of Title 18, United States Code.

2.      Attached to this affidavit as Exhibit 1 is an affidavit in support of a
criminal complaint.  Exhibit 1 contains a description of my professional history and
is incorporated by reference here in support of this criminal complaint.

## PURPOSE OF AFFIDAVIT

3.      This affidavit is submitted in support of a criminal complaint charging
that, in violation of 18 U.S.C. § 371, ZHENG YAN, a/k/a "Kari" a/k/a "the
Mistress" (ZHENG); YANG YANG, a/k/a Yang Chen, a/k/a Yuki (YANG); GE
SONGTAO, a/k/a Ge Song Tao a/k/a "Sherman" (GE); and FAN YANG (FAN)
have conspired with each other to violate U.S. law, specifically 13 U.S.C. § 305
(Unlawful Export Information Activities) and 18 U.S.C. § 554 (Smuggling of Goods
from the United States).

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and does not set forth all of my knowledge about this matter.

## Export and Shipping Records

5.      I know from my training, experience, and consultation with other federal agents that the U.S. Department of Commerce, through the U.S. Census Bureau and the U.S. Department of Homeland Security, Customs and Border Protection, participates in and maintains the Automated Export System (AES), an electronic portal of information for exports of goods from the United States. The Census Bureau requires the filing of electronic export information (EEI) through the AES (using AESDirect) pursuant to 13 C.F.R. Part 30. The purpose of these requirements is to strengthen the U. S. Government's ability to prevent the export of certain items to unauthorized destinations and end users because the AES aids in targeting, identifying, and, when necessary, confiscating suspicious or illegal shipments prior to exportation. 15 C.F.R. § 30.1(b). Exporters file EEI by entering data into AES via a computer. 15 C.F.R. § 30.6(a). EEI includes the date of export, the U.S. Principal Party of Interest, the description of the commodity to be exported, the intermediate consignee's name and address (if applicable), the ultimate consignee's name and address, and the country of ultimate destination. 15 C.F.R. §

2

30.6. Each filing can be identified by a unique Internal Transaction Number. Exporters, shippers, and freight forwarders are required to file an EEI for every export of goods or technology from the United States that have a value greater than $2,500 or for which an export license was required. (15 C.F.R. § 758.1; 15 C.F.R. § 30.2).

6.      Title 13, U.S.C. § 305 states that "[a]ny person who knowingly fails to file or knowingly submits [or causes the submission of] false or misleading export information through the Shippers Export Declaration (SED) (or any successor document) or the Automated Export System (AES) shall be subject to a fine not to exceed $10,000 per violation or imprisonment of not more than 5 years or both." Section 305 further states that "[a]ny person who knowingly reports any information on or uses the SED or the AES to further any illegal activity shall be subject to a fine not to exceed $10,000 per violation or imprisonment for not more than 5 years or both."

7.      Title 18, U.S.C. § 554 states that "[w]hoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or

regulation of the United States, shall be fined under this title, imprisoned not more than 10 years, or both."

### Zheng Yan

8.   Exhibit 1 describes the general backgrounds of GE, YANG, and FAN; in that exhibit, ZHENG is identified anonymously as "GE's Associate." According to ZHENG's U.S. State Department Visa application, which I have reviewed, ZHENG stated she is 27 years old, and a citizen and resident of the People's Republic of China. ZHENG was issued a B1/B2 U.S. visa on April 26, 2016. A B1/B2 visa permits temporary entry into the United States for business and tourism purposes. Her visa expires on April 21, 2026. According to U.S. Customs and Border Protection records, which I have reviewed, ZHENG has travelled to the U.S. on multiple occasions dating back to September 2012, and as recently as July 2018. I have reviewed ZHENG's email signature block on an email sent to COOPERATING SOURCE #4 (CS-4), which states ZHENG is employed by Shanghai Breeze Technology Co. Ltd. (SHANGHAI BREEZE), SOHO No.968 Jinzhong Rd. Rm 1008, Unit 6 Changning District Shanghai, China.

### PROBABLE CAUSE

9.   As described in Exhibit 1, YANG and FAN operated a business called BQ TREE LLC. YANG's business card identifies her as the "Chief Consultant" for BQ TREE LLC and FAN's business card identifies him as a "Consultant" for BQ

TREE LLC.  YANG and FAN have personally benefitted from the over $200,000 in wire from SHANGHAI BREEZE and ZHENG.

10.     As also described in Exhibit 1, YANG, GE, and ZHENG communicate via email.  Pursuant to court-authorized surveillance, I have reviewed certain emails among GE, YANG, and ZHENG.  In November 2016, YANG sent GE a signed employment contract with SHANGHAI BREEZE.  The contract appears to have been signed by GE on behalf of his company and then countersigned by YANG on November 10, 2016.  According to FBI linguists who have reviewed the contract, during a one to three month probationary period, the company agreed to pay YANG a monthly salary of $3,000, which would then increase to $5,000 per month, paid in two distributions per month.  The FBI linguists also noted the contract specifically described YANG's duties as "Party B [YANG] must handle business operations, conduct business negotiations, collaborate with other factories, declare products at customs, and conduct other similar business for Shanghai Breeze Technology Co., Ltd. in the United States."

11.     I reviewed a series of emails obtained by the U.S. Department of Commerce in October 2019, which were provided by California-based marine manufacturer ("BUSINESS-5") to a U.S. Department of Commerce Special Agent. These emails were sent in September 2018, and show YANG corresponded via email with a BUSINESS-5 about purchasing inflatable vessels.  During those initial communications (but not later communications), YANG stated the end user for the

vessels was the People's Republic of China Ministry of Agriculture, Fisheries Bureau.  Based on information provided by YANG, a representative of BUSINESS-5 prepared a price quote for YANG, which included the shipping contact as Yuki Yang, address Unit E & F, 13/F, Wang Cheong Commercial Building, No. 249-253, Reclamation Street, Kowloon, Hong Kong, cell number 929-800-1368, email yuki.chen@bqtree.com.

12.    I reviewed a series of emails provided by BUSINESS-5 to U.S. Commerce Department Agents sent in July 2019, in which YANG corresponded with BUSINESS-5.  In those emails, YANG's signature line identified her as the business representative of SHANGHAI BREEZE.

13.    I reviewed a series of emails provided by BUSINESS-5 to U.S. Commerce Department Agents in which YANG claimed several different end users for the aforementioned transaction.  On or about July 10, 2019, YANG listed the end user as –not the Chinese government – but United Vision, located in Hong Kong.  On the same date, YANG returned a signed price quote to BUSINESS-5. The signature line for the purchasing party lists Belt Consulting, Hong Kong, phone number 929-800-1368, with a hand signature and stamp showing Belt Consulting Company Limited along with Chinese characters in the center.  The price quote was for multiple vessels, engines, and all related equipment with a total value of approximately $266,496.

14.     Additionally, I have reviewed an email sent to BUSINESS-5 on or about July 10, 2019, in which YANG states that "I believe the U.S. Customs and Border may require a Shipper's Export Declaration (SED)."

15.     An email provided by BUSINESS-5 to U.S. Commerce Department Agent shows that on or about July 22, 2019, YANG, using email yuki.chen@bqtree.com, communicated to BUSINESS-5 explaining the overseas parties were negotiating with the bank and local government. YANG stated the relationship between Hong Kong and China mainland is sensitive, and there are strict requirements regarding wire transfers.

16.     On or about July 24, 2019, YANG, using email yuki.chen@bqtree.com, emailed BUSINESS-5, requesting that particular engines be added to the inflatable boat purchase. YANG requested a quote for the engines, specifically, Evinrude 55MFE outboard engines which are marketed "for military use." The U.S. Department of Commerce is currently reviewing the specifications of these engines to determine whether a license is required for export to China.

17.     While YANG was interacting with BUSINESS-5 regarding the proposed sale of the vessels and engines, she frequently updated ZHENG behind the scenes. Pursuant to a court-authorized search and surveillance, I reviewed approximately 127 emails sent between November 23, 2016 and October 8, 2019, between YANG and ZHENG. Of those emails, approximately 17 were correspondence between YANG and BUSINESS-5, which YANG forwarded to

ZHENG without BUSINESS-5 being "cc" (carbon copied).  ZHENG did not respond to these emails, but as discussed below, YANG's discussions with FAN about YANG's dealings with ZHENG establish that YANG and ZHENG channels of communications were not limited to emails.

18.     I have reviewed documents provided by BUSINESS-5 to the U.S. Department of Commerce in connection with the proposed sale of vessels, which state that on or about August 6, 2019, BUSINESS-5 received payment via international wire transfer in the amount of $79,929.  The wire transfer was listed as being generated from Belt Consulting in Hong Kong.

19.     Pursuant to court-authorized surveillance, I reviewed an email written in Chinese, translated by FBI linguists, sent by YANG to ZHENG on September 20, 2019.  In the email, YANG updated ZHENG regarding the status of the pending transaction with BUSINESS-5.  YANG attached to her email an invoice from BUSINESS-5 for the proposed sale of four vessels with engines and accessories.  The invoice was directed to "Belt Consulting Company Limited."  The invoice listed the same address for both Belt Consulting and intended shipping address: Unit E&F, 13/F, Wang Cheong Commercial BLDG, No. 249-253, Reclamation Street, Kowloon, Hong Kong.  The invoiced credited the buyer with an advanced deposit of $54,207.31 and listed $126,550.09 as the total amount due.  Regarding the attached invoice, YANG wrote to ZHENG that they needed to confirm that amount of the listed deposit was correct, and asked her about the process for clearing the shipment

through customs.  In her signature block, YANG identified herself as both BQ

TREE's chief consultant and SHANGHAI BREEZE's representative in the United

States.

20.     Additional documents provided by BUSINESS-5 to the U.S.

Department of Commerce state that on or about September 30, 2019, BUSINESS-5

received payment via international wire transfer in the amount of approximately

$34,905.  The wire transfer was listed as being generated from Belt Consulting in

Hong Kong.

21.     On or about October 7, 2019, after BUSINESS-5 informed YANG, via

email, that the goods were ready to ship upon receipt of shipping address and end-

user information, YANG emailed BUSINESS-5 that the company was Belt

Consulting Company Limited, and its shipping address was Unit E&F, 13/F, Wang

Cheong Commercial Building, No. 249-253, Reclamation Street, Kowloon, Hong

Kong.  YANG further stated the Ultimate Consignee (end user) was United Vision

Limited (Hong Kong).

22.     On or about October 8, 2019, I learned from a U.S. Commerce

Department Special Agent that he had conducted an open source search of the

shipping address provided by YANG to BUSINESS-5, which revealed that the

address is, in fact, for a company called LT Chemicals International.  A further

search of U.S. Government shipping records revealed no previous exports to that

address or that company from the United States.  An open source search for Belt

9

Consulting revealed that the company was incorporated on November 16, 2017, and has no web presence. A search of U.S. Government shipping records revealed no previous exports to Belt Consulting from the U.S. An open source search of United Vision Limited revealed that the company has no web presence and a search of U.S. Government shipping records revealed no previous exports to the company from the U.S. An open source search of SHANGHAI BREEZE revealed that the company has no web presence. There is, however, a LinkedIn.com profile listing "Ge Song Tao" as the "Chairman of SHANGHAI BREEZE." Additionally, in 2018, GE was quoted in an online article about the Seawork Asia Exhibition and identified as the General Manager of SHANGHAI BREEZE. A search of U.S. Government shipping records revealed there have been approximately 24 exports from the U.S. to SHANGHAI BREEZE located in Shanghai, China. Among those exports were two from BQ TREE in Jacksonville, Florida to SHANGHAI BREEZE in Shanghai, China. Specifically, on October 20, 2018, and again on January 17, 2019, BQ TREE sent parcels via United States Postal Service to SHANGHAI BREEZE. The contents were declared as flash drives.

23.     I have reviewed transcribed translations of court-authorized recordings of conversations between FAN and YANG during which they discuss the pending deal with BUSINESS-5 and GE's and ZHENG's involvement in it. In a recording, YANG and FAN acknowledged the inflatable vessels were ultimately intended for mainland China and not Hong Kong. YANG has described the Hong Kong

company to FAN as a shell company whose address is actually that of a chemical company. During a recorded conversation with FAN, YANG complained that BUSINESS-5 had not given her a final quote and wiring instructions for payment. YANG stated this was a problem for her because ZHENG had planned to travel to Nantong (a city in mainland China) to wire money from a bank there to the Hong Kong company. Based on my training and experience, I believe the purpose of wiring money from a bank in mainland China to Hong Kong before then wiring payment to BUSINESS-5 is to hide from BUSINESS-5 and U.S. authorities the identity of the actual buyer, SHANGHAI BREEZE.

24.     During another recorded conversation, YANG acknowledged to FAN her belief that GE initially wanted ZHENG to work directly with BUSINESS-5, but BUSINESS-5 was not paying attention to her. YANG has stated her belief to FAN that because BUSINESS-5 manufactures vessels for the U.S. Navy, that company may be contractually prohibited from selling its products to China, noting that the United States and China are not allies. YANG also told FAN that GE and ZHENG had not wired money owed to her; YANG continued on to state that although she would give them more time, if they ultimately did not wire her the money, then she and FAN would have to quit. YANG also complained to FAN that ZHENG was upset with YANG because the vessels would not be shipped on time despite YANG's having told BUSINESS-5 what was required. In response, FAN assured

YANG that they did not need the additional money, but told her that he hoped she would not make him regret getting her the job.

25.     I have learned from a Department of Commerce Special Agent that on or about October 8, 2019, an SED was filed via EEI, documenting the aforementioned export.  Consistent with the information that YANG provided to BUSINESS-5, on EEI #X20191008010900, the Shipper is listed as BUSINESS-5, no Intermediate Consignee is listed, and the Ultimate Consignee is listed as Belt Consulting in Hong Kong.  The address listed returns in the open source Hong Kong business registry database as registered to a chemical company.

26.     Based on my training and consultations with federal agents who investigation export violations, I know that individuals violating U.S. export regulations, either working on a profit basis and/or working on behalf of a foreign government, often use numerous false businesses to conduct their illicit procurement activities and mask the true destination, end-use, and end-user for U.S.-created goods and technology.  There is probable cause to believe that is what occurred here: the foregoing shows that ZHENG, YANG, GE, and FAN worked together to complete this transaction without disclosing that SHANGHAI BREEZE was the actual buyer.

27.     The proposed transaction with BUSINESS-5 described above is not the first time that BQ TREE LLC (YANG's and FAN's company) was used to facilitate the purchase of U.S.-manufactured vessels at the direction of GE and ZHENG. Pursuant to a court-authorized search and surveillance, I reviewed a series of emails

12

sent between approximately March 2017 to January 2019, in which YANG communicates with GE, YANG, and a Louisiana-based marine manufacturer (BUSINESS-6) about the procurement, on behalf of SHANGHAI BREEZE, of vessels from BUSINESS-6. Specifically, YANG acted as an intermediary between BUSINESS-6 and GE and ZHENG. These communications ultimately culminated in BUSINESS-6's sale of vessels to SHANGHAI BREEZE – not Belt Consulting – to be delivered at addresses in mainland China – not Hong Kong. Specifically, according to BUSINESS-6, the shipping address for two vessels was Shanghai Breeze Technology C., SOHO No 968, Jinzhong Rd, RM 1008 Nuit 6, Shanghai, China; the address for three vessels was Shanghai Breeze Technology Co., Unit B-04, Huashen Road, Shanghai, China; and the shipping address for five vessels was Chong Koi Macau LTD, Rua de Tai Lin, No 190, Edif. Lei lp, Andar T, Taipa 999078 China.

28.     Pursuant to a court-authorized search, I reviewed an email sent on August 21, 2018, by YANG to BUSINESS-6, in which YANG states the following:

> From: Yang Chen [mailto:yuki.chen@bqtree.com]
> Sent: Tuesday, August 21, 2018 10:46 AM
> To: [BUSINESS-6 Employee]
> Subject: Re: 6.5M RIB
>
> Hi [BUSINESS-6 Employee],
>
>
> It's nice to hear from you. I hope you have a wonderful vacation. How's your wife and your little one? As a stay at home Mom, I am exhausted.

I noticed that you changed your title to VP, Congratulations!

I don't need a shipping quote, all I try to figure out is the time frame. They really need this boat to be delivered A.S.A.P. Do you know how soon can this boat leave U.S port? And when can it arrive in Shanghai port? Thank you in advanced.  Have a great day.

[BUSINESS-6] then replied with the following:

**From:** [BUSINESS-6 Employee]
**To:** Yang Chen <yuki.chen@bqtree.com>
**Subject:** RE: 6.5M RIB
**Date:** Wed, 22 Aug 2018 01:40:51 +0000

Hi there!

Great to hear from you!  I hope you have been well.  [Discussion of BUSINESS-6 Employee's family] How is yours doing?

I believe Kari [i.e. ZHENG] has everything she needs for the shipping. Once we get her approval, we can schedule shipping immediately.

I believe [BUSINESS-6 Employee] spoke with her today about it.

Please let me know if there is anything else I can do to assist,

[BUSINESS-6 Employee Signature Block]

29.     Pursuant to a court-authorized search, I reviewed an email written in Chinese, translated by FBI linguists, sent on March 7, 2018, by YANG to ZHENG. In this email, YANG told ZHENG that she found two bigger pictures and asked ZHENG to see if ZHENG can use them.  Suggesting that YANG takes direction

14

from ZHENG, YANG further stated that she will find more if ZHENG can use them. The photos attached to YANG's email are of a prototype BUSINESS-6 boat and one photo is labeled "[BUSINESS-6] wins US Navy PBX Patrol Boat Contract."

30.    Pursuant to a court-authorized search, I reviewed an email written in Chinese, translated by FBI linguists, sent on March 21, 2018, by YANG to ZHENG and GE. The translated text states:

> Subject: Please find attached the newest contract from [BUSINESS-6], delivery tracking number, and the bank's letter of guarantee info
>
> From: Yang Chen <yuki.chen@bqtree.com>
>
> To: GE Songtao <mtg@vip.126.com>, ZHENG Yan <yzheng42@binghamton.edu>
>
> 1. DHL delivery tracking number : 4241129826
>
> 2. New [BUSINESS-6] contract（Attachment 1）
>
> 3. Bank's letter of guarantee (Attachment 2)
>
> Yuki
>
> Yang Chen
>
> Business representative in the United State
>
> Shanghai Breeze Technology Co.,Ltd.

This email also contained a scanned copy of a business contract for SHANGHAI BREEZE to purchase two boats from BUSINESS-6. This contract was dated March 11, 2017 and signed by GE and a BUSINESS-6 representative.

## CONCLUSION AND REQUEST TO SEAL

31.     Based on the aforementioned, your affiant respectfully submits that there is probable cause to believe that in violation of 18 U.S.C. § 371, ZHENG, YANG, GE, and FAN conspired with each other, and committed the acts described in this affidavit, to violate U.S. law, specifically 13 U.S.C. § 305 (Unlawful Export Information Activities) and 18 U.S.C. § 554 (Smuggling of Goods from the United States) by arranging for a false name of Ultimate End User to be placed on the SED to avoid export controls and government scrutiny.

32.     I ask that this affidavit be sealed, until further order of the court, to protect this investigation.  I am aware from my training and experience that evidence is destroyed, individuals flee, and witnesses may be tampered with or become uncooperative when the details known to law enforcement become prematurely available to the targets of a criminal investigation.

33.     I declare that under the penalty of perjury that the information provided above is true and correct.

Blake Eber
Special Agent
Federal Bureau of Investigation

Sworn before me this 16th of
October, Jacksonville, Florida

Patricia D. Barksdale
U.S. Magistrate Judge

17

# EXHIBIT 1

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Blake Eber, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"),
United States Department of Justice, acting in my official capacity. As such, I am an
investigative or law enforcement officer of the United States within the meaning of
Section 2510(7) of Title 18, United States Code, and am empowered by law to
conduct investigations of and to make arrest for offenses enumerated in Section 2516
of Title 18, United States Code. I have been employed as a Special Agent with the
FBI since January 2018, and am currently assigned to the Jacksonville Field Office's
Counterintelligence Squad, where I investigate, *inter alia*, offenses involving
espionage and the unlawful retention or disclosure of classified information.

2.      I have attended and received training in the areas of national security-
related criminal offenses, including espionage and the mishandling of classified
information, as well as the preparation of criminal complaints. I have also
participated in the investigation of national security offenses. Finally, I have had
numerous communications with federal law enforcement and Department of Justice
personnel specializing in national security investigations and prosecutions.

3.      I am the case agent assigned to an FBI-Naval Criminal Investigative
Service ("NCIS") investigation of FAN YANG ("FAN"); his wife, YANG YANG,

also known as ("a/k/a") Yang Chen, a/k/a Yuki ("YANG"); and GE SONGTAO, a/k/a Sherman ("GE"). As discussed in greater detail below, FAN currently holds a Top Secret U.S. security clearance and is actively serving in the United States Navy, working in a sensitive anti-submarine warfare unit. He has made material misrepresentations to hide his and YANG's relationship with GE, who is a Chinese national. FAN and YANG have also worked together to assist GE in unlawfully possessing firearms.

## PURPOSE OF AFFIDAVIT

4.      This affidavit is in support of a criminal complaint alleging there is probable cause to believe that FAN, YANG, and GE violated 18 U.S.C. § 371 (conspiracy to violate U.S. law, in this case, 18 U.S.C. § 922(g)(5), prohibiting possession of a firearm by a nonresident alien and 18 U.S.C. § 922(a)(5), prohibiting transfer of a firearm by a resident of a state to a nonresident); 18 U.S.C. § 922(a)(6) (making a false statement to a federally licensed firearms dealer); and 18 U.S.C. § 1001 (making false statements, here, during a security clearance background investigation).

5.      Unless noted otherwise, the information presented in this affidavit was gathered during the course of an investigation conducted by me and Special Agents of the FBI and NCIS, including but not limited to, personal interviews; physical surveillance; and the review of government, corporate, financial, and other records. I am not including in this affidavit all facts known to me, but rather only those I

believe are necessary to establish probable cause sufficient to support a criminal complaint.

6.     This affidavit contains information provided by three confidential sources, labeled respectively as COOPERATING SOURCE ("CS") # 1-3.

### PROBABLE CAUSE

### YANG YANG, a/k/a Yang Chen, a/k/a Yuki and BQ TREE LLC

7.     Based on a review of records from the State of Florida, I determined that BQ TREE LLC was incorporated by an individual known as Yang Chen on or about May 29, 2015. The corporation's principal/mailing/registered addresses were originally listed as 2208 Harbor Lake Drive, Fleming Island, Florida 32003, but were all changed effective January 2018, to 1172 Neff Circle, Jacksonville, Florida 32212. The name of the only enumerated member/registered agent/authorized person was changed from "YANG CHEN" to "YANG YANG" on or about January 2, 2019.

8.     According to public court records, YANG CHEN married FAN YANG on or about January 4, 2013. Public court records also establish that YANG CHEN and YANG YANG are the same person. I am also aware from personal observation that the address 1172 Neff Circle, Jacksonville, Florida 32212 consists of a single family residence located on the U.S. Navy base known as Naval Air Station Jacksonville. Furthermore, I am aware from review of public records, a series of interviews, and personal observation, that YANG YANG and FAN YANG both lived full-time at 1172 Neff Circle, Jacksonville, Florida 32212 ("former residence")

3

until July 18, 2019. I am aware from review of public records and physical surveillance conducted by other FBI Special Agents that YANG YANG and FAN YANG currently live full-time at ███████████████████████████ ████

9.    Pursuant to a court-authorized search, I have previously reviewed photographs taken by FBI agents inside the former residence in January 2019. I observed in one of those photographs a business card located inside the former residence. That business card listed YANG as the "Chief Consultant" for BQ TREE LLC. I observed in another photograph a second business card located inside the former residence. That second business card listed FAN as a "Consultant" for BQ TREE LLC. The business cards each contain email addresses for YANG and FAN.

10.    An FBI Forensic Accountant and I have reviewed financial records obtained by the FBI from Navy Federal Credit Union and from Federal Reserve Bank of New York pertaining to BQ TREE LLC. Those records revealed that from November 2016 through August 2019, BQ TREE, LLC and/or YANG YANG received approximately $205,270 in direct wire transfers from a corporate entity known as Shanghai Breeze Technology Co. ("Shanghai Breeze") and a known associate of GE ("GE's Associate"). According to COOPERATING SOURCE #1 ("CS-1"), GE's Associate is an employee of GE. (CS-1 is discussed in greater detail below.) The money transfers from Shanghai Breeze to BQ TREE LLC were generally large. For example, on or about March 20, 2017, BQ TREE LLC received a $40,000 wire transfer from Shanghai Breeze. According to an FBI forensic

4

accountant who has analyzed the bank records referenced above, transfers from Shanghai Breeze accounts are the largest source of revenue for BQ TREE LLC. Further, BQ TREE LLC's account application with Navy Federal Credit Union describes its business as an online office products and cellphone accessories retailer/wholesaler, and yet BQ TREE LLC's account statements lack banking activity that one would expect for such as business – like regular deposits of sales-generated income, the purchase of a high volume of office equipment or cellphone accessories as inventory, or payments for shipping of products to customers.

11.     In September 2018, I interviewed CS-1, who formerly served in the U.S. Navy.  CS-1 has no criminal record.  CS-1 advised me, *inter alia*, that CS-1 was a paid consultant for Shanghai Breeze.  CS-1 further advised that GE's Associate told CS-1 that YANG conducted "logistics" for Shanghai Breeze inside the U.S.  CS-1 also informed me that he/she was familiar with GE, who he/she also knew by the name "Sherman."

### GE SONGTAO, a/k/a Sherman and Shanghai Breeze Technology Co.

12.     According to GE's U.S. State Department Visa application, which I have reviewed, GE stated he is 49 years old; a citizen and resident of the People's Republic of China;  and the Chairman of Shanghai Breeze Technology Co. Ltd, located at 968-6-1008 Jinzhong Rd., Changning District, Shanghai, China.  GE was issued a B1/B2 U.S. visa on September 26, 2016.  A B1/B2 visa permits temporary entry into the United States for business and tourism purposes.  His visa expires on September 22, 2026.  According to U.S. Customs and Border Protection ("CBP")

5

records, which I have reviewed, GE has travelled to the U.S. on multiple occasions dating back to November 2013 and as recently as July 2018.

13.     During our September 2018 interview, CS-1 also told me that, while on numerous trips to the United States in the past, GE has invested time and money in obtaining tactical weapons training by hiring U.S.-based firearms and tactical instructors with prior military experience, including some with specialized tactical training from their respective experiences serving as Special Forces operators within the U.S. military.

14.     On October 9, 2019 COOPERATING SOURCE # 2 ("CS-2") told an FBI Special Agent that he/she provided GE with both pistol and rifle firearms training during the week of May 26, 2017 to June 1, 2017, at a public gun range in Virginia Beach, Virginia and on a private range in North Carolina. I have reviewed reports concerning GE's interactions with CS-2. According to those reports, during training, GE asked CS-2 for, among other things, an electronic copy of the unclassified U.S. Navy document entitled "OPNAV 3591 Small Arms Training and Qualification Instruction" that CS-2 used to structure the firearms training for GE. Further, according to CS-2, during the same week that GE received firearms training in Virginia and North Carolina, GE asked CS-2 to purchase a Sig Sauer P226 pistol and a Sig Sauer AR-15-style rifle. GE gave CS-2 $3,500 to pay for the firearms. GE then told CS-2 to retain the purchased firearms until GE returned to the U.S. in September 2017. According to CS-2, after initially accepting the money, CS-2 ultimately did not purchase the firearms for GE, and subsequently returned the

6

money to a mutual acquaintance who according to CS-2 was supposed to return the
money to GE on or about June 1, 2017.

## FAN YANG

15.    I have reviewed FAN's naval service records and certain Office of
Personnel Management records.  According to these documents, FAN was born in
the People's Republic of China in 1985, entered in the United States in 1999, and
became a U.S. citizen in 2006.  FAN is currently an active duty Naval Officer
currently assigned to Maritime Patrol Reconnaissance Weapons School at Naval Air
Station Jacksonville, in Jacksonville, Florida.  FAN enlisted in the U.S. Navy in
2005, but was subsequently discharged in 2007.  After attending college and
obtaining a bachelor's degree in electrical engineering, FAN then re-enlisted into the
Navy in July 2012 to attend Officer Candidate School.  After FAN received his
commission as an officer, he attended flight school and was subsequently transferred
in November 2014 to Naval Air Station Jacksonville, where he is still stationed to
this day.  He currently holds the rank of Lieutenant.  The same records show that
FAN currently holds a Top Secret security clearance, which he first obtained in 2012.

16.    In October 2018, I interviewed COOPERATING SOURCE # 3
(hereafter "CS-3"), who is a U.S. Naval Officer who has worked with FAN.  CS-3
informed me, *inter alia*, that he/she was aware that FAN was trained as a Naval
Flight Officer responsible for weapons and tactics aboard the P-8 anti-submarine
warfare aircraft.

7

17.     According to CS-3, FAN submitted to his Navy supervisors a NAVPERS 1336/3 (Rev. 02-2011) Special Request/Authorization Form, dated July 9, 2018, which I have reviewed. According to CS-3, the form is used by Navy personnel to request time off from work (or "liberty"), and FAN's form requested time off from work from July 12 to July 16, 2018 for the stated purpose of FAN taking his family to "Disney" for the weekend. I have reviewed U.S. airline records that establish that FAN and YANG flew from Jacksonville, Florida to Sioux City, Iowa on July 13, 2018, then made the return trip on July 15, 2018. Those tickets were purchased on July 9, 2018, the same day that FAN requested time off, purportedly to travel to "Disney." Credit card records from two U.S. banks and a credit card company, which I reviewed, show a card attributed to YANG was used to purchase a meal in South Sioux City, Nebraska on July 14, 2018, and that FAN's credit card was used to rent a car in Sioux City, Iowa on July 15, 2018. Credit card records also show that YANG purchased a one-way airline ticket for GE departing on July 16, 2018, from Omaha Epply Airfield in Nebraska. That airport is approximately 100 miles from South Sioux City, Nebraska, where YANG purchased a meal.

18.     In October 2018, I interviewed CS-3, who stated that by U.S. Navy instruction, Naval personnel taking liberty outside the local area (defined as 400-mile radius) requires commanding officer notification. CS-3 told me that FAN did not report his travel to Iowa to his commanding officer.

## Electronic Questionnaires for Investigations Processing (e-QIP)

19.    I have reviewed an Electronic Questionnaires for Investigations

Processing (e-QIP), which is the official U.S. government questionnaire for national

security positions, that FAN submitted on or about January 7, 2019, in support of

the renewal of his Top Secret clearance.  The contents of FAN's e-QIP form are

described below.

20.    Under the section "Penalties for Inaccurate or False Statements," the e-

QIP form states the following:

> The U.S. Criminal Code (title 18, section 1001) provides that knowingly
> falsifying or concealing a material fact is a felony which may result in
> fines and/or up to five (5) years imprisonment.  In addition, Federal
> agencies generally fire, do not grant security clearance, or disqualify
> individuals who have materially and deliberately falsified these form,
> and this remains a part of the permanent record for future placements.
> Your prospects of placement or security clearance are better if you
> answer all questions truthfully and completely.  You will have adequate
> opportunity to explain any information you provide on this form and to
> make your comments part of the record.

21.    Under "Statement of Understanding" the e-QIP form states:

> I have read the instructions and I understand that if I withhold,
> misrepresent, or falsify information on this form, I am subject to the
> penalties for inaccurate or false statement (per U.S. Criminal Code,
> Title 18, section 1001), denial or revocation of a security clearance,
> and/or removal and debarment from Federal Service.

FAN answered "Yes" following the aforementioned statement.

22.    In e-QIP Section 19 – Foreign Contacts, the first question reads:

> Do you have, or have you had, close and/or continuing contact with a
> foreign national within the last seven (7) years with whom you, or your
> spouse, or legally recognized civil union/domestic partner, or
> cohabitant are bound by affection, influence, common interest, and/or

obligation? Include associates as well as relatives, not previously listed
in Section 18.

FAN answered "No" to this question.

23.     Pursuant to a court-authorized search and surveillance, I have reviewed

approximately 400 emails between GE and YANG sent between November 2016

and September 2019; these include emails sent to and from the email address listed

on YANG's business card described above.  Among the emails that I reviewed was

an email YANG sent to GE in November 2016 to which YANG attached a Chinese-

language signed employment contract with Shanghai Breeze Technology Co. LTD.

The contract appears to have been signed by GE on behalf of his company and then

countersigned by YANG on November 10, 2016.  According to FBI linguists who

have reviewed the contract, during a one to three month probationary period, the

company agreed to pay YANG a monthly salary of $3,000, which would then

increase to $5,000 per month, paid in two distributions per month.  The FBI linguists

also noted the contract specifically described YANG's duties as "Party B [YANG]

must handle business operations, conduct business negotiations, collaborate with

other factories, declare products at customs, and conduct other similar business for

Shanghai Breeze Technology Co., Ltd. in the United States."

24.     In January 2019, during a court-authorized search, FBI personnel

collected an Audio/Video file from the dash cameras of a vehicle registered to FAN.

This file revealed a January 18, 2019 Chinese language conversation between FAN

and YANG.  I have spoken with FBI Chinese linguists who have reviewed the

10

Audio/Video file. They related that during that conversation, the couple discuss "Brother Tao," which I believe is a nickname for GE Songtao.

25.     In e-QIP Section 20A – Foreign Activities, Subsection Foreign Financial Interests Controlled on Your Behalf, the first question reads: "Have you, your spouse or legally recognized civil union/domestic partner, cohabitant, or dependent children EVER had any foreign financial interests (such as . . . bank accounts . . . ) in which you or they have direct control or direct ownership?" FAN answered "No" to this question. The second question in this section reads: "Have you, your spouse or legally recognized civil union/domestic partner, cohabitant, or dependent children EVER had any foreign financial interests that someone controlled on your behalf?" FAN answered "No" to this question.

26.     FAN listed a personal email address on his e-QIP submission. Pursuant to a court-authorized search, I have reviewed a document attached to an email sent in February 2013 to FAN's personal email account as a "cc" (or carbon copy) addressee. That attached document gave Huang Hua power of attorney over FAN's BANK OF CHINA account. The power of attorney document was dated December 14, 2012, and lists FAN's BANK OF CHINA account number. The email attaching the power of attorney contained the following language:

> From: The UPS Store 3517 <store3517@theupsstore.com>;
> To: 杨雷 <phenixyl@163.com>;
> . . . .
> Subject: Re: notary certificate BANK OF CHINA IN BEIJING
> Sent: Sat, Feb 2, 2013 7:45:44 PM

11

This document was notarized at our store, The UPS Store 3517 in
Pensacola FL.
Email us back with any further questions.

----- Original Message -----

From: 杨雷
To: store3517@theupsstore.com
Sent: Friday, February 01, 2013 9:59 PM
Subject: notary certificate BANK OF CHINA IN BEIJING

This is BANK OF CHINA of Beijing. Now a customer named Hua
Huang want to reset the password of the account of Fan Yang. But in
CHINA, customer can reset the password of the account only by
himself. So Yang Fan offer us the Notary Certificate for us to authorize
Hua Huang to reset the password. So I would like to ask you to identify
the notary certificate and whether the notary is from yours.

THANK YOU VERY MUCH.

----- Original Message -----

27.     The above indicates that FAN had a foreign financial interest via a

BANK OF CHINA account that someone controlled on his behalf and that FAN did

not report these facts as required in his e-QIP form.

28.     In e-QIP Section 20B – Foreign Business, Professional Activities, and

Foreign Government Contacts – the first question reads:  "Have you in the last seven

(7) years provided advice or support to any individual associated with a foreign

business or other foreign organization that you have not previously listed as a former

employer? (Answer 'No' if all your advice or support was authorized pursuant to

official U.S. Government business.)"  FAN answered "No" to this question and did

not otherwise list any foreign businesses or other foreign organizations among his

12

former employers. A later question in this section reads: "Has any foreign national in the last seven (7) years offered you a job, asked you to work as a consultant, or consider employment with them?" FAN answered "Yes" to this question, but in response to the follow up question, "Did you accept the offer?" he answered, "No." Where the form directs, "Provide explanation," FAN stated that in late 2017, GE had offered FAN a position as a "Consultant/ U.S. representative for his Chinese business," which according to FAN, "import[s] speedboats from the U.S. for sale in China." FAN stated that he informed GE that he was still in the Navy and could not take on additional work.

29.  · Pursuant to a court-authorized search, I reviewed an email chain sent in April 2017. Using an email address listed on his BQ TREE LLC business card discussed above, FAN wrote a series of emails to the owner of a business in Orlando, Florida ("BUSINESS-1"). In this email chain, FAN stated he is part of a consulting firm that focuses on bridging Chinese and U.S. businesses. FAN went on to state that he has a client in China who wants to bring Chinese citizens to the U.S. for "firearm tourism." Specifically, the email contained the following language:

----- Original Message -----
[F.G.],

Could you describe what does the IPSC sport shooting course includes?

Thanks,
Fan

On Mon, Apr 24, 2017 at 9:38 PM, f G <[F.G.]@yahoo.com> wrote:

13

Hi Fan ,

Let me know the date you will be visiting our facility . I will be traveling to Europe to teach and shoot a match in May , if I am not available I will have one of my workers meet with you and show you the facility .

Regards
[F.G.]

Sent from my iPhone

On Apr 24, 2017, at 7:14 PM, Fan Yang . . . wrote:

[F.G],

Thanks for the quick response. We still have other coordination we need to take care of, so if we get a group going, it'll most likely be Sept to Dec this year. Our client is visiting US mid to late May. Hopefully we can arrange a visit to your facility and discuss the options face to face.

I cc'd Yuki on this email. She's going to handle the client's travel to the US and she will be travelling with the client.

Thank you very much,
Fan

On Sun, Apr 23, 2017 at 6:12 PM, f G <[F.G.]@yahoo.com> wrote:

Hello ,

Thank you for your interest in [BUSINESS-1] .

We can organize IPSC sport shooting courses for you. Let us know the time line you would like and I can give you dates for the first group . Approximate cost would be $600 per person per day of training . This would include , equipment ,Ammunition and firearms .

You would need to supply a minimum of 1 maybe 2 interpreters for translation .

14

Once you decide the dates let me know and we can start organizing .
Hotels are a 45 minute drive from Orlando Intl airport and Hotels are
20 minutes from the range facility .

Looking forward to hearing from you .

[F.G]
Owner
[BUSINESS-1]

Sent from my iPhone

On Apr 23, 2017, at 4:10 PM, Fan Yang . . . wrote:

From: Fan Yang . . .
Subject: Request info on customized course
Message Body:

Hello,

We are a consulting firm that focuses on bridging Chinese business and
US business together. We have a client in China that want to bring
Chinese citizens to the US for "firearm tourism". My understanding is
that it's legal for foreign national to shoot firearm at a range as long as
the owner, or a representative is present. If there's any concerns
regarding that, we can look more into it.

We are still in the planning stage, so I'm requesting 3 day, 5 day and 7
day customized course for a group of 10-20 people. They will all be
Chinese nationals with little to no experience in firearm, and we don't
expect them to speak English very well either. We will provide the
translators for the group, and you'll provide the necessary firearms and
ammunition. If the first group goes well, we expect a new group every
3-6 month initially. Obviously, if it gains popularity, we'll schedule
groups more often.

These tourists are not looking to be proficient in a specific firearm, but
looking for more of a exposure of everything you can offer. Different
firearms, different techniques, and lots of shooting should make them
very happy.

Thank you very much. Looking forward to working with you.

15

----- Original Message -----

30.     The above email chain, coupled with the extensive transfers of cash from Shanghai Breeze to BQ TREE LLC, indicate that FAN provided support to individuals associated with foreign businesses and did not report this conduct as required.                                                  •

### FAN and YANG Purchase of a Firearm for GE

31.     In response to a Grand Jury subpoena, a business in Phoenix, Arizona ("BUSINESS-2"), provided documentation, which I have reviewed, showing that on or about March 30, 2017, FAN purchased a Sig Sauer MK25 P226 Pistol 9mm Serial Number 47A192149 for $1,049.  FAN requested the firearm be shipped to a business in Union, Michigan ("BUSINESS-3").

32.     In response to a Grand Jury subpoena, BUSINESS-3 provided documentation, which I have reviewed, showing that on or about April 25, 2017, FAN paid BUSINESS-3 approximately $159 to engrave the initials "G.S.T." and the phrase "NEVER OUT OF THE FIGHT," into the Sig Sauer Pistol 9mm Serial Number 47A192149.  I believe that "G.S.T." are the initials of GE Songtao. According to documents provided by BUSINESS-3, FAN directed the company to send the firearm to a Federal Licensed Firearm (later identified as a firearms dealer in Orange Park, Florida ("BUSINESS-4")).

33.     I have reviewed a copy of a Firearms Transaction Record (also known as ATF-form 4473) obtained from BUSINESS-4.  That form documents that

16

BUSINESS-4 transferred a Sig Sauer Model P226 9mm pistol, serial number 478192149 to FAN on or about April 30, 2017. It appears there was a typographical error on the form, as I believe that the number "8" should have been an "A." The form states that "Section A [of the form] – Must Be Completed Personally By Transferee/Buyer." On the form, under Section A, FAN is identified as the transferee/buyer. Section A also contains, among other things, the following question (number 11.a): "Are you the actual transferee/buyer of the firearm(s) listed on this form?" Following this question, the form provides, in bold: "**Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.**" In response to the question above, FAN answered "Yes," indicating he was the actual transferee/buyer of the firearm. At the end of Section A, the form states, again in bold: "**I certify that my answers in Section A are true, correct, and complete. . . . I understand that answering 'yes' to question 11.a if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law. . . .**" Fan signed the form under the transferee's/buyer's signature block.

34.    Pursuant to a court-authorized search, I reviewed an email from YANG to GE, sent on June 28, 2017, less than a month after FAN obtained the firearm engraved with GE's initials. YANG sent the email from the email account listed on her BQ TREE LLC business card that is discussed above. YANG's email attached

17

what appears to be an expense report for BQ TREE LLC from March to June 2017.
This attached expense report and others described below were in Chinese, but were
translated by FBI linguists with whom I have conferred. This expense report
contained an entry with the following information: Date"3/30"; Category
"Personal" [understood to be referring to GE's personal expenses]; Description
"Sig"; Notes "Sig 1049.99 engraving + shipping 158.63 fee and background check 40
(no receipt); Amount "$1,248.62"; Balance "$34,751.38." I am familiar with GE's
email address based on my review of an email sent to YANG on April 14, 2017, in
which the signature block listed GE Songtao of Shanghai Breeze Co. as the sender.

 35.   Pursuant to a court-authorized search, I reviewed an email sent on
January 3, 2018, which YANG sent to GE and GE'S Associate. This email attached
a December 2017 expense report that contained an entry with the following
information: Date "12/16"; Category "Personal", Description "storage"; Notes
"store the gun"; Amount "46.90"; Balance "$13,529.85."

36.   On September 24, 2019, I participated in a court-authorized search of
storage unit F100 located at SecurCare Self Storage, Fleming Island, Florida 32256.
During the court-authorized search, I found a Sig Sauer MK25 P226 Pistol 9mm
Serial Number 47A192149 with "G.S.T." and the phrase "NEVER OUT OF THE
FIGHT" engraved into the firearm. Additionally, the Sig Sauer was located within a
black-colored gun range bag. Within the bag was a Sig Sauer plastic gun carrying
case that had a label identifying a Sig Sauer MK25 P226 Pistol 9mm Serial Number
47A192149.

18

37.    Pursuant to court-authorized surveillance, I reviewed an email sent on
September 23, 2019, which YANG sent to GE and GE's Associate. This email
again contained an expense report for April to September 2019. This expense report
contained entries for "storage," this time under the category "company." Also
attached to this email were four invoices for the use of Unit F084 SecurCare Self
Storage, Fleming Island, Florida 32256 for April, May, June and July 2019. Yang
Chen (that is, YANG) was listed as the customer in the invoices. Additionally,
attached to this email were two invoices for the use of Unit F100 SecurCare Self
Storage, Fleming Island, Florida 32256 for August and September 2019. Yang Yang
(that is, YANG) was listed as the customer in the invoices.

38.    In September 2018, CS-1 also told me that on or about May 24, 2017,
he/she went to the shooting range "On Target Sports," in Orange Park, Florida with
FAN and GE. (Before eventually stating that CS-1 went to the gun range with GE
and FAN, he/she initially claimed to have had minimal interactions with FAN.)
According to On Target Sports records, which I reviewed, GE, FAN, and CS-1 have
accounts at that business, and on or about May 24, 2017, FAN and CS-1 made
purchases. CS-1 stated the three individuals shot guns for approximately four hours
while at the range. During a subsequent interview in April 2019, CS-1 told me that
GE owned a SIG Sauer 226 MK 25, which he called "his baby." According to CS-1,
he/she went to gun ranges in the U.S., including On Target Sports, approximately
four or five times to shoot with GE. On those occasions, YANG would provide CS-
1 a black range bag with the SIG Sauer 226 MK 25 inside to give to GE at the gun

19

range. CS-1 would then transport this firearm to the gun range. According to CS-1,

YANG stated it would be illegal for GE to possess a firearm.

## CONCLUSION AND SEALING REQUEST

39.    Based on the foregoing, there is probable cause to believe that,

beginning no later than March 2017, and continuing through no earlier than

September 2019, in the Middle District of Florida and elsewhere, in violation of 18·

U.S.C. § 371, FAN, YANG, and GE conspired with each other, and committed the

acts described in this affidavit, to try to accomplish a shared and unlawful plan to

commit offenses against the United States, specifically, knowing possession of a

firearm in or affecting interstate commerce by an alien admitted to the United States

under a non-immigrant visa, in violation of 18 U.S.C. § 922(g)(5); and willful

transfer, giving, and delivery of a firearm to an individual who does not reside in the

same state as the transferor, in violation of 18 U.S.C. § 922(a)(5). Further, based on

the foregoing, there is probable cause to believe that on or about April 30, 2017, in

the Middle District of Florida, in violation of 18 U.S.C. § 922(a)(6), FAN knowingly

made a false and fictitious statement, material to the lawfulness of the disposition of

a firearm, intended and likely to deceive a firearms dealer in connection with the

acquisition of a firearm, asserting that he was the actual transferee/buyer of a firearm

when he knew then and there that this representation was false. Further, based on

the foregoing, there is probable cause to believe that on or about January 7, 2019, in

the Middle District of Florida, in violation of 18 U.S.C. § 1001, FAN made and used

a writing containing materially false, fictitious, and fraudulent representations when

20

he submitted to the United States Government a written e-QIP form, in which he denied having and having had, close and/or continuing contact with a foreign national within the last seven years with whom he or his spouse was bound by affection, influence, common interest, and/or obligation; denied having had any foreign financial interests that someone controlled on his behalf; and denied in the last seven years, providing advice or support to any individual associated with a foreign business or other foreign organization, when he knew then and there that these representations were false.

40.    I ask that this affidavit be sealed, until further order of the court, to protect this investigation. I am aware from my training and experience that evidence is destroyed, individuals flee, and witnesses may be tampered with or become uncooperative when the details known to law enforcement become prematurely available to the targets of a criminal investigation.

41.    I declare under the penalty of perjury that the information provided above is true and correct.

Blake Eber
Special Agent
Federal Bureau of Investigation

Sworn before me this  11th  of
October, Jacksonville, Florida

Patricia D. Barksdale
U.S. Magistrate Judge

21